# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | |
|---|---|
| ANZA TECHNOLOGY, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>AVANT TECHNOLOGY, INC., a Nevada corporation, d/b/a MUSHKIN ENHANCED MFG,<br><br>            Defendants. | CASE NO.:  A:17-CV-1193-LY<br><br><br>District Judge:        Hon. Lee Yeakel<br>Complaint Filed:    March 29, 2017 |

**DEFENDANT AVANT TECHNOLOGY, INC., D/B/A MUSHKIN ENHANCED MFG'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS I-VI**

*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    LEGAL STANDARD.................................................................................... 3

III.   ARGUMENT ................................................................................................ 3

       A.    Avant Has Adequately Stated a Plausible Counterclaim for
             Invalidity ........................................................................................... 3

       B.    Avant Has Adequately Stated a Plausible Counterclaim for
             Noninfringement ............................................................................... 6

       C.    Avant Has Adequately Stated a Counterclaim for Inequitable
             Conduct .............................................................................................. 7

       D.    Avant has Adequately Stated a Counterclaim Based on Marking
             Limitations ...................................................................................... 10

       E.    Avant Has Adequately Pled Claims Based on Licensing
             Restrictions, Exhaustion and First Sale Limitations ............................ 12

       F.    Avant Has Adequately Pled Its Antitrust Counterclaim ...................... 14

             1.    *Avant Set Forth Adequate Facts Supporting Sham
                   Litigation Claim* ...................................................... 15

             2.    *Avant Was Injured by Costs Incurred in Defense of Anza's
                   Attempt to Enforce Knowingly Invalid Patents, and Its
                   Foreclosure of Competition in the Semiconductor Industry* ........ 17

             3.    *Avant Has Also Adequately Pled a Walker Process Claim* ......... 18

       G.    Alternatively, Leave to Amend Should be Granted ............................. 20

IV.    CONCLUSION............................................................................................ 20

## **TABLE OF AUTHORITIES**

**Page**

**Federal Cases**

*Abbott Labs. v. Teva Pharms. USA, Inc.*,
    432 F. Supp. 2d 408 (D. Del. 2006) ................................................................. 17

*Al-Kidd v. Ashcroft*,
    580 F.3d 949 (9th Cir. 2009) ........................................................................... 13

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
    876 F.3d 1350, (Fed. Cir. 2017) ................................................................. 11, 12

*AT&T Corp. v. Microsoft Corp.*,
    2004 U.S. Dist. LEXIS 1214, at *12-13 (S.D.N.Y. Feb. 2, 2004) .................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) ..................................................................... 3, 4, 5, 13

*Bernhardt L.L.C. v. Collezione Europa USA, Inc.*,
    CIVIL NO. 1:01CV00957, 2002 U.S. Dist. LEXIS 13832, at *6
    (M.D.N.C. July 3, 2002) ........................................................................... 4, 6, 7

*Bio-Technology Gen. Corp. v. Genentech Inc.*,
    886 F. Supp. 377 (S.D.N.Y. 1995) .................................................................... 18

*Boldstar Tech., LLC v. Home Depot, Inc.*,
    517 F. Supp. 2d 1283 (S.D. Fla. 2007) ................................................................. 6

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
    157 F.3d 1340 (Fed.Cir. 1998) ....................................................................... 20

*Carborundum Co. v. Molten Metal Equip. Innovations*,
    72 F.3d 872 (Fed. Cir. 1995) ......................................................................... 12

*CIVIX-DDI, L.L.C. v. Cellco P'ship*,
    387 F. Supp. 2d 869 (N.D. Ill. 2005) .................................................................. 11

*Conley v. Gibson*,
    355 U.S. 41 (1957) .................................................................................... 3

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) .................................................................. 14, 15

*CVD Inc. v. Raytheon Co.*,
    769 F.2d 842 (1st Cir. 1985) ......................................................................... 18

*Deniece Design, LLC v. Braun*,
    953 F. Supp. 2d 765 (S.D. Tex. 2013) ................................................................. 4

*Dippin' Dots. Inc. v. Mosey*,
    476 F.3d 1337 (Fed. Cir. 2007) ...................................................................... 15

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)...........................................................................8

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
  163 F. Supp. 3d 938 (D.N.M. 2016) ...............................................................7, 8

*Garmin v. TomTom*,
  2007 U.S. Dist. LEXIS 74032 (E.D. Tex. Oct. 3, 2007) ............................19, 20

*Gart v. Logitech, Inc.*,
  254 F.3d 1334 (Fed. Cir. 2001)....................................................................10, 11

*Griggs v. Hinds Junior Coll.*,
  563 F.2d 179 (5th Cir. 1977) ..............................................................................20

*Hand Held Prods. v. Code Corp.*,
  Civil Action No. 17-167-RMG, 2017 U.S. Dist. LEXIS 89271, at *10
  (D.S.C. June 9, 2017)................................................................................4, 5, 6

*Handgards, Inc. v. Ethicon, Inc.*,
  601 F.2d 986 (9th Cir. 1979) ...........................................................14, 15, 17, 18

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d. 618 (E.D. Mich. 2000)............................................................15

*In re Gabapentin Patent Litig.*,
  649 F. Supp. 2d 340, (D.N.J. 2009) ...................................................................17

*In re Neurontin Antitrust Litig.*,
  *No. 1479*,
  2009 U.S. Dist. LEXIS 77475, at *96-97 (D.N.J. Aug. 27, 2009) ...................17

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
  677 F.2d 1045 (5th Cir.1982) ...............................................................................3

*Kearney & Trecker Corp. v. Cincinnati Milacron, Inc.*,
  562 F.2d 365 (6th Cir. 1977) ..............................................................................18

*Kee Action Sports, Ltd. Liab. Co. v. Shyang Huei Indus. Co.*,
  No. 3:14-cv-00071-HZ, 2015 U.S. Dist. LEXIS 173312, at *6 (D. Or. Dec.
  30, 2015) .............................................................................................................13

*Malibu Media, LLC v. Doe*,
  No. 12-2078, 2013 U.S. Dist. LEXIS 55985, at *26 (E.D. Pa. Mar. 6,
  2013) ...................................................................................................................13

*Marchon Eyewear, Inc. v. Tura LP*,
  No. 98 CV 1932 (SJ), 2002 U.S. Dist. LEXIS 19628, at *14 (E.D.N.Y.
  Sep. 30, 2002) ....................................................................................................17

*Morton Grove Pharm., Inc. v. PAR Pharm. Cos.*,
  No. 04 C 7007, 2006 U.S. Dist. LEXIS 13779, at *8 (N.D. Ill. Mar. 28,
  2006) ...................................................................................................................15

iii

*Nabi Biopharmaceuticals v. Roxane Labs., Inc.*,
    No. 2:05-CV-889, 2007 U.S. Dist. LEXIS 101850, at *12 (S.D. Ohio Mar.
    21, 2007) ..................................................................................................................... 17

*Nobelpharma AB v. Implant Innovations*,
    141 F.3d 1059 (Fed. Cir. 1998)................................................................................... 15

*OpenLCR.com, Inc. v. Rates Tech., Inc.*,
    112 F. Supp. 2d 1223 (D. Colo. 2000)........................................................................ 15

*Pfizer v. Apotex, Inc.*,
    726 F. Supp. 2d 921 (N.D. Ill. 2010) ............................................................................ 4

*Precimed Inc. v. ECA Med. Instruments*,
    No. 13-CV-761A, 2014 U.S. Dist. LEXIS 10349, at *26 (W.D.N.Y. Jan.
    28, 2014) ..................................................................................................................... 11

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)...................................................................................................... 14

*Rochester Drug Co-Op. v. Braintree Labs.*,
    712 F. Supp. 2d 308 (D. Del. 2010)............................................................................ 17

*Seitz v. Envirotech Sys. Worldwide, Inc.*,
    No. H-02-4782, 2007 U.S. Dist. LEXIS 44275, at *9 (S.D. Tex. June 19,
    2007) ........................................................................................................................... 11

*Skinder-Strauss Associates v. Massachusetts Continuing Legal Educ., Inc.*,
    870 F.Supp. 8 (D. Mass. 1994) .................................................................................. 17

*Soverain Software L.L.C. v. Amazon.com, Inc.*,
    383 F. Supp. 2d 904 (E.D. Tex. 2005) ....................................................................... 11

*State Contracting & Eng'g Corp. v. Florida*,
    258 F.3d 1329 (Fed. Cir. 2001)................................................................................... 12

*Sun Microsystems, Inc. v. Versata Enters.*,
    630 F. Supp. 2d 395, 411 (D. Del. 2009).................................................................... 13

*Teirstein v. AGA Med. Corp.*,
    No. 6:08cv14, 2009 U.S. Dist. LEXIS 20850 (E.D. Tex. Mar. 16, 2009)..................... 4, 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................................... 6

*Theranos, Inc. v. Fuisz Pharma LLC*,
    876 F. Supp. 2d 1123 .................................................................................................. 10

*Transweb, LLC v. 3M Innovative Props. Co.*,
    812 F.3d 1295 (Fed. Cir. 2016)................................................................................... 19

*TransWeb, LLC v. 3M Innovative Props. Co.*,
    Civil Action No. 10-4413 (FSH), 2011 U.S. Dist. LEXIS 59095, at *59
    (D.N.J. June 1, 2011) ................................................................................................... 18

iv

*Wistron Corp. v. Phillip M. Adams & Assocs.*,
  No. C-10-4458 EMC, 2011 U.S. Dist. LEXIS 46079, at *37–38 (N.D. Cal.
  Apr. 28, 2011) ................................................................................................................. 4

**Statutes**

15 U.S.C. § 2 ................................................................................................................. 14

35 U.S.C. § 101 ............................................................................................................... 4

35 U.S.C. § 102 ........................................................................................................ 3, 4, 5

35 U.S.C. § 103 ........................................................................................................ 3, 4, 5

35 U.S.C. § 112 ........................................................................................................ 3, 4, 5

35 U.S.C. § 287 ......................................................................................................... 10, 11

35 U.S.C. § 287(a) ..................................................................................................... 10, 12

35 U.S.C. §102 ................................................................................................................. 5

35 U.S.C. §112 ................................................................................................................. 5

**Rules**

Fed.R.Civ.P. 12(b)(6)                                                                                    17

## I.      __INTRODUCTION__

Plaintiff ("ANZA TECHNOLOGY, INC.") claims that Defendant AVANT

TECHNOLOGY, INC. ("Avant") infringes claims in three patents: U.S. Patent No. 7,124,927

(the "'927 patent"), U.S. Patent No. 6,354,479 (the "'479 Patent"), and U.S. Patent No.

6,651,864 (the "'864 Patent") (collectively, the "Patents-in-suit"). Second Amended Complaint

("SAC"), Doc. No. 74, ¶ 46–48. The asserted claims in the Patents-in-suit are not identified

particularly in their Second Amended Complaint, but are specifically identified in their

Infringement Disclosures served on Avant. Each of the asserted claims purport to cover different

types of dissipative bonding tools and tips used in microelectronic assembly and fabrication.

Anza's asserted patent claims are not infringed, invalid and unenforceable, for a number

of reasons. The specific grounds for invalidity, and the identification of prior art and

anticipation/obviousness analysis, are specified by Defendant Avant in its Invalidity Disclosures,

which have been served on Plaintiff Anza. See Exhibit 1: Avant's Invalidity Disclosures. As an

example of Avant's disclosures, Avant has specifically described how the Anza patents are

invalid and unenforceable in the Invalidity Disclosures and its Counterclaims.

For example, the Anza asserted claims are invalid and unenforceable because they are

derived directly from old technology invented by others. In the '927 Patent (a "continuation-in-

part" patent), the only new matter was Figure 3 of that patent, which inventor Steven Reiber,

CEO of Anza claimed to have invented himself. However, the capillary tip shown in Figure 3

was directly copied from prior patents and publications that had issued over a decade before the

'927 Patent was filed in 2005. Mr. Reiber concealed this fact from the PTO, which would show

that the only new matter in the '927 Patent was actually "old matter" derived and taken from

others -- that is, the '927 Patent is not new or novel in the least.

Similarly, the '479 Patent and '864 Patent are also invalid, as they were each derived

from several prior art disclosures and inventions of others. For instance, the '479 Patent includes

"old technology" in Figures 1-4, 5A-5B, which is purported to be part of Mr. Reiber's invention.

Mr. Reiber concealed the fact that these bonding tips were developed and invented by others –

"old matter." During the subsequent prosecution of the related '864 Patent, the Patent Examiner required Mr. Reiber to designated these bonding tips and machines as "prior art," because "that which is old" should be designated and disclosed to be "prior art," which was done in the '864 Patent after the Patent Examiner required Mr. Reiber to do so. Moreover, multiple *Inter Partes* Review ("IPR") Petitions have been filed pointing out how the '479 Patent and '864 Patent should be cancelled and invalidated.

And, additionally, other reexamination proceedings have been filed and prosecuted in an Action Closing Prosecution, where the Patent Examiner found the claims in the '479 Patent and the '864 Patent to be unpatentable for literally dozens of different reasons and grounds. Anza settled the litigation related to the reexamination proceeding just prior to the issuance of a final order that would have cancelled all the asserted patent claims in the '479 Patent and the '864 Patent.

In addition to the fact that the Patents-in-suit are facially invalid on numerous grounds, Avant has repeatedly informed Anza that Avant does not use any tools or tips that would infringe on any of its patent claims. And, Anza has been informed that Avant does not practice any methods that are covered by the asserted patent claims. Yet, Anza continues to pursue this litigation against Avant despite this information, as it has with dozens of other defendants in various jurisdictions – all the while knowing that its patents are unenforceable and its claims of infringement are without merit.

In its responsive pleading, Avant counterclaimed for declaratory judgments of Invalidity (Count I), Non-infringement (Count II), Inequitable Conduct (Count III), Marking Limitations (Count IV), and License, Exhaustion and First Sale Limitations (Count V). Avant also asserts a Counterclaim for relief under federal antitrust laws based on the sham litigation it has maintained in this Court, and Anza's fraudulent actions before the Patent Office (Count VI). The specifics of those actions are thoroughly spelled out in Avant's Answer and Amended Counterclaims to Anza's Second Amended Complaint. Moreover, Avant has already served Anza with its invalidity contentions, and has filed its own *Inter Partes* Review on all the claims in the '927

2

Patent with the PTO, setting forth dozens of grounds that would, individually, render Anza's patent claims invalid.

Nonetheless, Anza complains that it has not been adequately put on notice of the factual basis of Avant's Counterclaims. Anza now moves under Rule 12(b)(6) to dismiss all six Counterclaims asserted by Avant, on the purported basis that all six Counterclaims fail to state a claim upon which relief can be granted. As explained below, Avant has more than satisfied the pleading requirements necessary to support each of its Counterclaims.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure, Rule 12(b)(6) imposes a substantial burden on Anza. The Court may not dismiss Avant's Counterclaims unless Anza demonstrates "beyond doubt that [Avant] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). Except for the Counterclaim for Inequitable Conduct (Counterclaim III), the threshold pleading requirement is not one of "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Motions to dismiss for failure to state a claim are "viewed with disfavor" and "rarely granted." *Kaiser Aluminum*, *supra*, 677 F.2d at p. 1050.

## III.    ARGUMENT

### A.    Avant Has Adequately Stated a Plausible Counterclaim for Invalidity

In its first Counterclaim for invalidity, Avant alleges that each asserted claim in each of the Patents-in-suit are invalid for failure to comply with the requirements of patentability under 35 U.S.C. §§ 102, 103 and/or 112 (the Patent Act). Doc. No. 77: Avant's Answer and First Amended Counterclaim ("FACC"), ¶ 9. Avant also referred Anza to the invalidity contentions it served on Anza, as well as several IPR petitions filed with the PTO alleging that each of the asserted claims in the Patents-in-suit are invalid and should be cancelled. FACC, Doc. No. 77, ¶

3

10–16. Anza asserts these allegations are insufficient to state a claim because they fail to place Anza on notice of the factual grounds for invalidity.

Anza is incorrect. The majority of district courts (including courts in the Fifth District) have held that it is sufficient to state a counterclaim for invalidity by simply citing to particular statutory provisions of the Patent Act. Even under *Twombly* and *Iqbal*, courts routinely deny Rule 12 motions attempting to dismiss invalidity assertions in pleadings that state that a patent fails to satisfy one of more of the statutory requirements for patentability under Title 35.[1]

Avant is not resting on a simple statement of invalidity, as shown in its Counterclaims and its Invalidity Disclosures. As shown in the cited precedent, "early disclosure of invalidity and infringement contentions satisfies the purpose of *Twombly* and *Iqbal* 'to weed out frivolous litigation where insufficient facts are alleged to form the basis for a claim'" and requiring a heightened pleading standard for invalidity counterclaims would effectively circumvent these disclosure requirements. *Hand Held Prods.*, *supra*, at *8–11 (holding scheduling order requiring early invalidity disclosures satisfied purpose of *Twombly* and *Iqbal*); *Wistron Corp. v. Phillip M. Adams & Assocs.*, No. C-10-4458 EMC, 2011 U.S. Dist. LEXIS 46079, at *37–38 (N.D. Cal. Apr. 28, 2011) ("By requiring the party claiming invalidity to flesh out and support its invalidity contentions early on, the Patent Local Rules fulfill the function of *Twombly* and *Iqbal*."). Thus, where a court requires early invalidity disclosures, a counterclaim for invalidity need only refer to the statutory provisions which render the Patents-in-suit invalid.

---

[1] See, e.g., *Hand Held Prods. v. Code Corp.*, Civil Action No. 17-167-RMG, 2017 U.S. Dist. LEXIS 89271, at *10 (D.S.C. June 9, 2017) ("*Hand Held Prods*"); *Teirstein v. AGA Med. Corp.*, No. 6:08cv14, 2009 U.S. Dist. LEXIS 20850 (E.D. Tex. Mar. 16, 2009) (merely alleging that "[t]he claims of the [patent] are invalid for failing to satisfy one of more of the statutory requirements for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112" satisfied the standard established in *Twombly*); *Deniece Design, LLC v. Braun*, 953 F. Supp. 2d 765, 773 (S.D. Tex. 2013) (allegation that a patent was invalid for failure to comply with 35 U.S.C. sections 102, 103 and 112 was sufficient to state a counterclaim for invalidity); *Pfizer v. Apotex, Inc.*, 726 F. Supp. 2d 921, 937-938 (N.D. Ill. 2010) (counterclaim alleging that the patents were "invalid for failure to comply with one or more of the conditions of patentability set forth in Title 35 of the United States Code" was sufficiently pled); *Bernhardt L.L.C. v. Collezione Europa USA, Inc.*, CIVIL NO. 1:01CV00957, 2002 U.S. Dist. LEXIS 13832, at *6 (M.D.N.C. July 3, 2002) (invalidity counterclaim sufficiently pled where defendant alleged simply that the patents-in-suit were invalid for failure to comply with the requirements of patentability under Title 35).

Here, the parties in this case were required by the Court to make early disclosure of infringement and invalidity contentions. See Doc. No. 67: Order dated Feb. 27, 2018. In its Counterclaim, Avant specifically alleged that the Patents-in-suit are invalid under 35 U.S.C. §§ 102, 103 and/or 112. FACC, Doc. No. 77, ¶ 9. This is all that is required under *Twombly* and *Iqbal*, particularly where the parties are required to make early invalidity disclosures. E.g., *Hand Held Prods.*, *supra*, at *8–11.

Moreover, Avant served Anza with its invalidity contentions on May 2, 2018 (over a week before Avant's responsive pleading even filed). See Exhibit ("Ex.") 1: Avant's Invalidity Contentions; Ex. 2: Invalidity Charts A-1- A-3. In its counterclaim, Avant went above and beyond pleading requirements by incorporating by reference its invalidity contentions, which identify numerous ways in which Anza's patents fail to comply with statutory patentability requirements. FACC, Doc. No. 77, ¶ 10–11. For example, Avant identified numerous instances of prior art to the '479 and '864 Patents (parent related applications to the '927 Patent), rendering the Patents-in-suit not novel and obvious, and thus invalid under 35 U.S.C. § 103. Avant identified a myriad of patents and publications which previously described the exact type of dissipative bonding tools which Anza claims as its own novel invention. Ex. Ex. 1: Avant's Invalidity Contentions, pp. 1–22.  The invalidity contentions also explain in detail that the Patents-in-suit fail to meet the requirements of 35 U.S.C. §112, including failure to satisfy the enablement requirement, failure to satisfy the written description requirement, and indefiniteness of the claimed subject matter. Ex. Ex. 1: Avant's Invalidity Contentions, pp. 22–24.

Avant also identified to Anza, and incorporated the prior art identified in the IPR petition Avant filed with the PTO alleging that the claims in '927 Patent are all invalid and unpatentable, as well as the five other IPR petitions filed by third party, Xilinx Corporation, alleging that the '479 and '864 Patents are invalid and unpatentable, and the two reexamination proceedings before the PTO initiated by TDK Corporation alleging that the '479 and '864 Patents are invalid and unpatentable. FACC, Doc. No. 77, ¶ 10–11. Exs. 3 and 4: Action Closing Prosecution re '479 and '864 Patents.

Contrary to Avant's assertion, a complaint or counter-complaint may incorporate documents into the pleading by reference, and a court must consider such documents when evaluating a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference…"). Avant's expressly incorporated invalidity allegations in IPRs and in its timely-served invalidity contentions should be considered in the context of this motion to dismiss.

It is unclear how Anza can claim that it has not been made sufficiently aware of the specific facts and code provisions supporting Avant's Counterclaim for patent invalidity. Given the fact that Anza has already received Avant's detailed invalidity contentions, Avant "struggles to imagine what purpose the motion to dismiss [Avant's] invalidity counterclaim serves." *Hand Held Prods.*, *supra*, at *11. Avant's pleading adequately apprises Anza of the grounds on which Avant intends to proceed to demonstrate invalidity, and the motion to dismiss should be denied.

### B.      Avant Has Adequately Stated a Plausible Counterclaim for Noninfringement

Similarly, Anza asserts that Avant's counterclaim for noninfringement is inadequately pled, and fails to put Anza on notice of the claim against it. Avant asserts in its counterclaim for noninfringement that Avant has not, and does not, infringe, directly or indirectly, or contribute to infringement by another, or actively induce others to infringe, any valid or enforceable asserted claim of the Patents-in-suit. Doc. No. 77: FACC, ¶ 20–28.

Avant's allegations sufficiently state a claim for noninfringement.[2] In response to a Motion to Dismiss its Complaint in this case (e.g. failure to allege use of a "capillary tip" or a

---

[2]  See e.g., *Hand Held Prods.*, supra, at *7–8 (holding simple allegation that claimant does not infringe on any of the asserter patents was sufficient to state a claim for noninfringement); *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283 (S.D. Fla. 2007) (same); *Neonatal Prod. Grp. v. Shields*, No. 13-CV-2601-DDC-KGS, 2014 U.S. Dist. LEXIS 165937, at *24 (D. Kan. Nov. 26, 2014) (same); *Bernhardt L.L.C. v. Collezione Europa USA, Inc.*, CIVIL NO. 1:01CV00957, 2002 U.S. Dist. LEXIS 13832, at *5 (M.D.N.C. July 3, 2002) (same).

wire "bonding tip" by Avant), Anza argued that it was not required to identify every claim limitation in its infringement claim, and this Court agreed that Plaintiff Anza's Complaint sufficiently alleged infringement despite the "missing element" in their infringement allegations. Plaintiff Anza now argues just the opposite in their Motion to Dismiss, but it should not be allowed to have it both ways.

Just as "a plaintiff in a patent infringement suit is not required to delineate each claim limitation of the asserted patent and how the accused device infringes each limitation," *Teirstein v. AGA Med. Corp.*, No. 6:08cv14, 2009 U.S. Dist. LEXIS 125002, at *9 (E.D. Tex. Feb. 13, 2009), a declaratory-judgment plaintiff in a patent *non*-infringement suit is not required to delineate each claim limitation of the asserted patent and how the accused device does not infringe each limitation.  In the present case, Avant alleges that it has not infringed, and is not infringing, Anza's patents. Doc. No. 77: FACC, ¶¶ 20–28.

It is difficult to imagine what additional factual support Anza believes would be sufficient. The Counterclaims could incorporate the rote exercise of "proving the negative" – i.e., individually reciting for each and every claim limitation in Anza's patents that Avant's products do not infringe. But, the rules of pleading do not require such a pointless exercise. "Determination of noninfringement and invalidity often are complex factual issues that require weighing evidence presented by the parties at a later stage of litigation. To rule on these issues at this time would be premature." *Bernhardt L.L.C.*, *supra*, 2002 U.S. Dist. LEXIS 13832, at *5.

## C.      Avant Has Adequately Stated a Counterclaim for Inequitable Conduct

"The inequitable conduct claim, formerly known as 'fraud on the patent office,' is a judge-made equitable doctrine with a long history." *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 163 F. Supp. 3d 938, 978 (D.N.M. 2016) ("*Front Row Techs.*"). The substantive elements of inequitable conduct are that: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the Patent Office. *Exergen Corp. v. Wal-Mart*

7

*Stores, Inc.*, 575 F.3d 1312, 1327 n. 3 (Fed. Cir. 2009) (citations omitted) ("*Exergen Corp.*").

Claims for inequitable conduct are subject to the heightened pleading requirement of Federal

Rule of Civil Produre, Rule 9(b). In *Exergen Corp.*, *supra*, 575 F.3d at p. 1328, the Federal

Circuit explained the test for whether a claim for inequitable conduct is adequately pled:

> [T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

Thus, a pleading must allege the "individual associated with the filing and prosecution of

a patent application [who] failed to disclose material information." *Id*. at p. 1327 n. 3. Where it is

claimed that a patentee withheld material prior art, a pleading can meet the "what" and "where"

requirements by identifying "the specific location within the withheld prior art where the

material information is found." *Id*. at p. 1329. Further, "[w]here parties allege failures to disclose

material information, the 'when' applies from the date the party with the information submitted

its patent applications to the USPTO through the date of issue." *Front Row Techs., LLC v. NBA

Media Ventures, LLC*, 163 F. Supp. 3d 938, 982 (D.N.M. 2016). The requisite "knowledge" may

be alleged by stating circumstances demonstrating that the party responsible for the inequitable

conduct was familiar with and aware of the prior art. A party can establish the "how" and "why"

requirements by showing that the withheld information was material to the PTO's decision to

allow the claim, and that if the PTO was aware of the truth, it would have rendered the invention

unpatentable (also referred to as "but-for materiality"). *Id*. at pp. 983–984.

There are more than sufficient factual allegations in Avant's pleading, even under Rule

9(b)'s heightened standard, to support Avant's counterclaim for Inequitable Conduct. With

regard to the '927 Patent, Avant alleges that the '927 Patent application claimed that Steven

Reiber (Anza's predecessor-in-interest) was the inventor of an embodiment shown in Figure 3 of

the '927 Patent (displaying a laser beam capillary tip), and also claimed that this Figure 3

embodiment was "new matter" that was being added to a prior patent. Avant's counterclaim then sets forth numerous instances in which the exact same embodiment shown in Figure 3 (that Mr. Reiber claimed to have invented) was previously and repeatedly disclosed in previously published and filed by Pac Tech Packaging Technologies from 1993–1998. Doc. No. 77: FACC, ¶¶ 39–46. Avant even includes illustrations in the counterclaim showing that the figure Mr. Reiber claimed to have invented was identical to figures shown in Pac Tech Packaging Technologies' publications and patents, down to the same labels and descriptions. Doc. No. 77: FACC, ¶¶ 38–42.

The Counterclaim goes on to allege that Mr. Reiber appears to have concealed the fact that the Figure 3 capillary in the '927 Patent (the supposedly "new matter") was actually derived from another source from the PTO. Doc. No. 77: FACC, ¶ 48. This is because he submitted a hand-drawn sketch, suggesting to the PTO that he independently conceived the capillary tip himself, when he clearly copied it from other sources. Doc. No. 77: FACC, ¶ 48. The actual source of the capillary tip information and its status as prior art would be material to the PTO's determination of patentability. Doc. No. 77: FACC, ¶ 49. The numerous prior publications of the same capillary tip shown in Figure 3, coupled with the fact that Mr. Reiber submitted a hand-drawn figure of an identical copy of Pac Tech Packaging Technologies' capillary to the PTO, supports a strong inference that Mr. Reiber knew that he did not invent the embodiment shown in Figure 3, and that he purposely failed to inform the PTO in the application for the '927 in order to deceive PTO and to conceal the fact that the '927 Patent is derived from prior art. Doc. No. 77: FACC, ¶ 49.

Moreover, Mr. Reiber has concealed "prior art" and "old technology" in his prior patents, including the '479 Patent and the '864 Patent, in an attempt to claim it as his own. See Figures 1-4, 5A-5B in '479 Patent and '864 Patent (only identified as "prior art" in '864 Patent after Patent Examiner required "prior art" descriptor for "that which is old," concealed old technology in '479 Patent). With regard to the '479 and '864 Patents, Avant specifically identified other material information that was withheld by Mr. Reiber when the Patents-in-suit were applied for

9

in 2002 and 2003, that further supports the notion that the patent is unenforceable as a matter of law. First, Avant identified numerous prior art references that were identified by TDK Corporation after it filed two (2) reexamination proceedings as to the '479 and '864 Patents— prior art which was concealed and not disclosed to the PTO when later patent applications were prosecuted. Doc. No. 77: FACC, ¶ 50. Further, Avant noted that Anza clearly recognizes the materiality of JEDEC references from 1991 and 1994, which Anza has identified as one of the primary bases of its claims for infringement. However, these earlier JEDEC standards were not disclosed to the PTO when the '479 and '864 Patent applications were submitted. Doc. No. 77: FACC, ¶ 52–53.

Similar allegations that a patent applicant deliberately concealed material information from the PTO have been held to be sufficient to satisfy requisite elements of inequitable conduct under Rule 9(b). *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1137 (denying motion to dismiss inequitable conduct claim focused on entire patent). Accordingly, Avant has adequately alleged the basis for its claim for Inequitable Conduct and has put Anza on notice of the claims against it.

**D.      Avant has Adequately Stated a Counterclaim Based on Marking Limitations**

Section 287(a) of the Patent Act provides that no damages shall be recovered by the patentee in any action for infringement, "except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." 35 U.S.C. § 287(a). Under the marking statute, a party "is entitled to damages from the time when it either began marking its products in compliance with section 287(a) or when it actually notified [the infringer] of its infringement, whichever is earlier." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993).

Notice can be actual or constructive. Actual notice is given when a patentee explicitly communicates a claim of infringement of a specific patent with respect to a specific accused product. See *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001). Constructive notice is

10

given when a patentee marks its own patented products and causes its licensees to mark their patented products. *Ibid*. A patentee must also ensure that its licensees comply with the statute. *Soverain Software L.L.C. v. Amazon.com, Inc.*, 383 F. Supp. 2d 904, 909 (E.D. Tex. 2005). If there is no pre-filing notice or marking, then there can be no pre-filing damages. *CIVIX-DDI, L.L.C. v. Cellco P'ship*, 387 F. Supp. 2d 869 (N.D. Ill. 2005). It is Anza's burden of proof to show that it, and all its licensees, complied with the marking requirement, before it will be entitled to past damages. *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350 (Fed. Cir. 2017).

Avant seeks an order that "Anza's requested relief for *past damages* prior to actual notice of the Patents-in-suit are barred or limited from recovery, in whole or in part, by the failure of Anza to give proper notice to Avant or the public pursuant to 35 U.S.C. § 287." Doc. No. 77: FACC, ¶ 66. Thus, the counterclaim seeks a declaratory judgment that Avant has not had actual or constructive notice of the alleged infringement of Anza's Patents-in-suit, because Anza has failed to comply with marking requirements under Section 287, and consequently is barred from obtaining relief for *past damages*.

Anza is wrong in suggesting that there is no such thing as a declaratory judgment counterclaim for failure to mark under the marking statute. A declaratory relief action can be maintained in order to obtain an order limiting a patentee's damages. See *Precimed Inc. v. ECA Med. Instruments*, No. 13-CV-761A, 2014 U.S. Dist. LEXIS 10349, at *26 (W.D.N.Y. Jan. 28, 2014) ("declaratory judgment serves to clarify where litigants stand in an ongoing relationship with each other, to prevent or to limit damages that are reasonably certain to occur."); *Seitz v. Envirotech Sys. Worldwide, Inc.*, No. H-02-4782, 2007 U.S. Dist. LEXIS 44275, at *9 (S.D. Tex. June 19, 2007) (denying a motion to strike a counterclaim seeking a declaratory judgment that the patentee's damages were limited by a number of factors, including failure to mark).

It is true that the Federal Circuit recognizes that Section 287 is "a limitation on damages, and not an affirmative defense." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017). However, this is because "[t]he patentee bears the burden of pleading and

proving he complied with § 287(a)'s marking requirement." *Ibid*. The fact that Section 287 is not considered an affirmative defense, and rests the burden of proof on the patentee alleging infringement, demonstrates that it is the appropriate subject for a claim for declaratory judgment. If Anza fails to prove that it, and its licensees, complied with marking requirements, then Anza is precluded from seeking any pre-filing damages. As such, the claim for declaratory relief based on these allegations is proper.

     **E.**    **Avant Has Adequately Pled Claims Based on Licensing Restrictions, Exhaustion and First Sale Limitations**

     Avant's Fifth Counterclaim alleges: "Anza's requested relief is barred or otherwise limited because one or more components in Avant's Accused Products were made by a device or system, or purchased from a source, that possesses or has prior rights under a license under one or more of the Patents-in-suit, which subjects Anza's assertions of liability to the first sale doctrine, patent exhaustion or implied or express licensing restrictions." Doc. No. 77: FACC, ¶ 69. Thus, Avant alleges that the Accused Products are licensed under the Patents-in-suit, and thus are immune from an infringement lawsuit.

     This counterclaim invokes the application of two distinct doctrines— implied or express licensing restrictions, and the "first sale" doctrine, also commonly referred to as "patent exhaustion." With regard to the former, a license, whether express or implied, is a defense to patent infringement. See *Carborundum Co. v. Molten Metal Equip. Innovations*, 72 F.3d 872, 878 (Fed. Cir. 1995). The determination of whether there is an express license or an implied license to a patent is "governed by ordinary principles of state contract law." *State Contracting & Eng'g Corp. v. Florida*, 258 F.3d 1329, 1339 (Fed. Cir. 2001). An implied license arises where a patentee's statements or conduct led the accused infringer to infer consent to its use of the patent. *AT&T Corp. v. Microsoft Corp.*, 2004 U.S. Dist. LEXIS 1214, at *12-13 (S.D.N.Y. Feb. 2, 2004).

     Avant alleges that Anza has entered licensing and settlement agreements with numerous specified entities following patent litigation related to the Patents-in-suit, and that there is an

exhaustion of patent rights subject to the first sale doctrine of any bonding equipment (or parts of said equipment) made by these entities, or products made by bonding equipment produced by these entities, and any associated license rights/covenants not to sue. Doc. No. 77: FACC, ¶ 70– 73. For instance, some of the parties that have settled with Anza are the largest bonding tool and bonding tip manufacturers, and after settlement and licensing of Anza's patents following litigation with Anza, their bonding tips (and product produced by licensed bonding tips) are licensed products not subject to claims of infringement. Avant believes that products being accused of infringement are subject to these licensing rights, and the patent rights to assert infringement against such products have been "exhausted."

Based on these licensing agreements, Avant alleges that "some or all of the Accused Products identified by Anza in its Infringement Contentions is [sic] subject to, and immunized from litigation against, the first sale doctrine, patent exhaustion and/or license rights." Doc. No. 77: FACC, ¶ 70–74. Without citing any applicable authority, Anza argues the claim should be dismissed because "there are no facts to connect Avant or the Accused Products to any of the aforementioned companies." Doc. No. 81: Anza's Motion to Dismiss, p. 15. Avant believes there is such a connection, and precisely *how* the Accused Products are immunized from suit based on these prior licensing agreements is a question of fact to be determined during discovery and/or trial – which is entirely permissible under the law.[3]

Anza has been adequately placed on notice of the fact that Avant contends that licensing agreements with the third-parties identified in Avant's counterclaim have resulted in the Accused Products being immunized from suit. This is all that is needed to support a claim for relief. See *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) (*Twombly* and *Iqbal* do not require that

---

[3] *Malibu Media, LLC v. Doe*, No. 12-2078, 2013 U.S. Dist. LEXIS 55985, at *26 (E.D. Pa. Mar. 6, 2013) (denying motion to dismiss defense brought under the first sale doctrine as premature at the pleading stage); *Sun Microsystems, Inc. v. Versata Enters.*, 630 F. Supp. 2d 395, 411 (D. Del. 2009) (denying a motion to dismiss a claim for patent exhaustion that alleged the patentee exhausted its rights in its patent by licensing it to the accused infringer); *Kee Action Sports, Ltd. Liab. Co. v. Shyang Huei Indus. Co.*, No. 3:14-cv-00071-HZ, 2015 U.S. Dist. LEXIS 173312, at *6 (D. Or. Dec. 30, 2015) (denying motion to dismiss counterclaim for implied or express license as premature at the pleading stage).

13

the pleadings recite all facts "necessary to carry the [] burden."). The nature of product stream by which Avant obtains the Accused Products involves complex factual issues that require weighing evidence presented by the parties at a later stage of litigation. Anza's Motion to Dismiss should be denied because it would be premature to rule that these issues should be taken out of this litigation at this early stage in the litigation.

### F.    Avant Has Adequately Pled Its Antitrust Counterclaim

Avant asserts a counterclaim for antitrust liability under Section 2 of the Sherman Act. Section two of the Sherman Act is violated by monopolizing, or attempting to monopolize, interstate or foreign commerce. 15 U.S.C. § 2. Generally, a patentee who complies with patent laws in procuring and enforcing a patent is immune from antitrust laws under the *Noerr-Pennington* doctrine. However, there are two exceptions under which a patentee may be subject to antitrust liability under the Sherman Act, based the patentee's enforcement of a patent—bad faith/sham litigation and fraud on the patent office.

First, an antitrust violation can occur if a patentee instigated an infringement lawsuit with full knowledge that the patents were invalid or unenforceable (i.e., where the lawsuit was a "sham litigation" or a "bad faith prosecution.").[4] An allegation that a patent infringement claim was brought in bad faith, or without any objective basis, is sufficient to constitute a cause of action under the antitrust laws, provided that the other essential elements of an antitrust violation are established. *Handgards*, *supra*, 601 F.2d 986.

Second, enforcement of a patent procured by fraud on the Patent Office may serve as the basis of a cause of action under Section 2 (if the other elements of an antitrust claim are present). *Walker Process Equip., Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (commonly referred to as a "*Walker Process*" claim). *Walker Process* claims require a showing of actual

---

[4] See *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*"); *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir. 1979) (prosecution of patent enforcement actions in bad faith may violate antitrust laws); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1350 (Fed. Cir. 2014) ("*Content Extraction & Transmission*").

fraud upon the PTO through factual misrepresentations or factual omissions. *Dippin' Dots. Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007)

Anza does not appear to dispute that Avant has adequately pled the general predicate allegations of an antitrust claim (market power and willful acquisition). Rather, Anza essentially claims that Avant failed to adequately plead the two exceptions to *Noerr-Pennington* patent immunity. Anza contends that Avant failed to plead fraud under the heightened pleading standard of Federal Rule of Civil Procedure, Rule 9(b), and that Avant also failed to adequately plead "sham litigation." Anza also claims that Avant failed to adequately plead "antitrust injury."

### 1.    *Avant Set Forth Adequate Facts Supporting Sham Litigation Claim*

Avant's antitrust claim is primarily based on the "sham litigation" exception to the *Noerr-Pennington* doctrine. Doc. No. 77: FACC, ¶¶ 97. The two-part test for a "sham litigation" claim requires a showing that: (1) that the litigation was "objectively baseless," and (2) the patentee "subjectively intended to harm the plaintiff through the abuse of a governmental process itself, as opposed to harms flowing from the outcome of that process." *Content Extraction & Transmission*, *supra*, 776 F.3d at p. 1350.

Under the first prong, a "sham" lawsuit must be objectively baseless "in the sense that no reasonable litigant could realistically expect success on the merits." *Nobelpharma AB v. Implant Innovations,* 141 F.3d 1059, 1071 (Fed. Cir. 1998), quoting *PRE*, *supra*, 508 U.S. at p. 50. Numerous district courts have held that knowingly asserting an invalid patent satisfies the "objectively baseless" prong of the sham litigation test. See *Morton Grove Pharm., Inc. v. PAR Pharm. Cos.*, No. 04 C 7007, 2006 U.S. Dist. LEXIS 13779, at *8 (N.D. Ill. Mar. 28, 2006); *OpenLCR.com, Inc. v. Rates Tech., Inc.*, 112 F. Supp. 2d 1223, 1233 (D. Colo. 2000) (plaintiff satisfied pleading requirements by alleging that defendant knowingly failed to disclose material prior art to PTO in procuring their patent); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d. 618, 643-44 (E.D. Mich. 2000) (plaintiff satisfied pleading requirements by alleging patent was prosecuted for the purpose of providing a basis to instigate sham patent infringement litigation).

Here, Avant has sufficiently pled that Anza knew it had no basis to sue Avant when it filed this lawsuit. Avant alleges in detail why Avant knew its patents were invalid prior to the time of filing of this lawsuit:

- The '927 Patent is invalid because it is derivative of prior art. Anza's CEO, Mr. Reiber, knew it was derived from prior art, given he copied Figure 3 in the '927 patent from prior publications and patents held by Pac Tech Packaging Technologies. Doc. No. 77: FACC, ¶¶ 87–91, 36–49.

- The '479 and '864 Patents are also invalid and unpatentable because they are derived from numerous instances of prior art. Doc. No. 77: FACC, ¶¶ 87–91, 50–53. Anza is aware that the claims in the '479 and '864 Patents that it has accused Avant of infringing are invalid and unpatentable. In 2012, TDK Corporation filed two IPR proceedings with the PTO, alleging, *inter alia*, that claims in the '479 and '864 Patents are invalid and unpatentable; and, therefore, should be cancelled based on several prior art references (the same claims asserted in this litigation). The PTO agreed. In 2013, the PTO Examiner issued an Action Closing Prosecution for each reexamination proceeding, finding that the '479 Patent and the '864 Patent claims were unpatentable and should be cancelled. Anza settled litigation with the TDK defendants before that determination could become final. However, Anza has been aware since 2012 that the claims '479 Patent and the '864 Patent on which it bases its infringement claims against Avant are invalid. Doc. No. 77: FACC, ¶¶ 87–91, 50–53.

- The JEDEC standards on which Anza bases its claims of infringement against Avant were actually published as early as 1994, long before Anza's filing dates for the patents in the Anza patent portfolio. Doc. No. 77: FACC, ¶¶ 87–91, 36–49.

These allegations, which are incorporated into the Counterclaim for violation of antitrust laws in Paragraph 87 of the pleading, satisfy the first prong of a bad faith/sham litigation claim.

Second, Avant alleged numerous facts showing that the filing of this suit was motivated by Anza's subjective intent to harm competition. Anza has sued numerous entities, in addition to Avant, on the sole basis that they are alleged to utilize processes for microelectronic bonding that comply with JEDEC standards. Doc. No. 77: FACC, ¶¶ 79–83. This translates to Anza's effective position that almost all, if not all, bonding equipment used in the semiconductor industry infringes the bonding patents in its portfolio because most, if not all, bonding equipment used in the semiconductor industry may be JEDEC compliant. Doc. No. 77: FACC, ¶ 83. Anza initiated and expanded a baseless patent infringement action against Avant for the purpose of excluding competitors from entering into the semiconductor industry, to maintain exclusivity in the market, to frustrate Avant's presence in the relevant market, and to impose (or attempt to impose) an illegal, unlawful, and anticompetitive burden on Avant. Doc. No. 77: FACC, ¶¶ 91–

16

93. These allegations satisfy the second prong of a bad faith/sham litigation claim. *PRE*, *supra*, 508 U.S. at pp. 60–61, 73 (claim is improper when its purpose is "not to win a favorable judgment, but to harass a competitor and deter others from competition, by engaging the litigation process itself, regardless of the outcome").

Contrary to Anza's contentions, Avant's allegations adequately set forth an antitrust claim based on sham litigation. Indeed, when presented with similar allegations of sham litigation as the basis for antitrust counterclaims, federal courts routinely deny Rule 12(b)(6) motions.[5]

### 2. *Avant Was Injured by Costs Incurred in Defense of Anza's Attempt to Enforce Knowingly Invalid Patents, and Its Foreclosure of Competition in the Semiconductor Industry*

Without citing to any applicable authority, Anza also claims that Avant failed to adequately plead antitrust injury. However, numerous courts have held that, in patent cases where the antitrust injury is based upon "bad faith prosecution" or "sham litigation" theory "it is obvious that the costs incurred in defense of the prior patent infringement suit are an injury which 'flows' from the antitrust wrong." *Handgards, supra*, 601 F.2d at p. 997; see also *Marchon Eyewear, Inc. v. Tura LP*, No. 98 CV 1932 (SJ), 2002 U.S. Dist. LEXIS 19628, at *14 (E.D.N.Y. Sep. 30, 2002) ("Although Defendants do not specifically allege that their injury arises from the costs of defending against the present suit, as the Court in *Handgards* noted, 'it is

---

[5] See *Rochester Drug Co-Op. v. Braintree Labs.*, 712 F. Supp. 2d 308, 316 (D. Del. 2010) (denying motion to dismiss because allegations showed plaintiff not entitled to *Noerr-Pennington* immunity); *Skinder-Strauss Associates v. Massachusetts Continuing Legal Educ., Inc.*, 870 F.Supp. 8, 10 (D. Mass. 1994) ("Because [the] counterclaims allege that the lawsuit filed . . . is objectively baseless and conceals an attempt to interfere directly with the business relationships of a competitor, the counterclaims adequately state a claim and should not be dismissed under Fed.R.Civ.P. 12(b)(6)"); *In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340, 361-65 (D.N.J. 2009) (refusing to dismiss sham litigation counterclaims because they sufficiently alleged baseless lawsuit); *In re Neurontin Antitrust Litig., No. 1479*, 2009 U.S. Dist. LEXIS 77475, at *96-97 (D.N.J. Aug. 27, 2009) (denying motion to dismiss because plaintiff's knowledge of non-infringement was fact question); *Nabi Biopharmaceuticals v. Roxane Labs., Inc.*, No. 2:05-CV-889, 2007 U.S. Dist. LEXIS 101850, at *12 (S.D. Ohio Mar. 21, 2007) (denying motion to dismiss counterclaim where defendant provided plaintiff samples and reasons for non-infringement); *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 425 (D. Del. 2006) (holding that court must accept sham allegations as true where alleged lack of probable cause for patent infringement suit).

17

obvious that the costs incurred in defense of the prior patent infringement suit are an injury which 'flows' from the antitrust wrong.'"); *Bio-Technology Gen. Corp. v. Genentech Inc.*, 886 F. Supp. 377, 380 (S.D.N.Y. 1995) ("In a suit alleging antitrust injury based upon a bad faith prosecution theory it is obvious that the costs incurred in defense of the prior patent infringement suit are an injury which flows from the antitrust wrong."); *CVD Inc. v. Raytheon Co.*, 769 F.2d 842, 857 (1st Cir. 1985) (finding antitrust injury from legal expenses incurred in resolving a claim brought in bad faith); *Kearney & Trecker Corp. v. Cincinnati Milacron, Inc.*, 562 F.2d 365, 368 (6th Cir. 1977) (same). Thus, the pleading of sham litigation implies that the plaintiff has incurred the costs of defending such a suit, which is sufficient to allege a cognizable antitrust injury. *Handgards, supra*, 601 F.2d at p. 997.

Antitrust injury is also sufficiently alleged where the plaintiff states facts demonstrating a foreclosure of competition as a result of the enforcement of a fraudulently prosecuted patent. *TransWeb, LLC v. 3M Innovative Props. Co.*, Civil Action No. 10-4413 (FSH), 2011 U.S. Dist. LEXIS 59095, at *59 (D.N.J. June 1, 2011). Here, Avant set forth in detail that Anza contends that *any* microelectronic bonding equipment used in the semiconductor industry which is JEDEC compliant infringes on one or more of the claims in its Patents-in-suit. Doc. No. 77: FACC, ¶ 79–83. This effectively means that Anza believes that its Patents-in-suit cover most, if not all, bonding equipment used in the semiconductor industry, because almost all, if not all, bonding equipment used in the semiconductor industry may be JEDEC compliant. Anza's continued attempts to enforce its invalid and fraudulently obtained patents effectively forecloses on any competition in the semiconductor industry, given all bonding equipment used in the semiconductor industry is purportedly subject to its patent portfolio. As such, Anza is wrong that Avant has not set forth any facts supporting a finding of antitrust injury as a result of its anticompetitive conduct.

### 3.   *Avant Has Also Adequately Pled a Walker Process Claim*

Avant has also adequately pled facts sufficient to maintain a *Walker Process* claim, in that the Patents-in-suit were obtained by fraud on the PTO. This is because "the showing

18

required for proving inequitable conduct and the showing required for proving the fraud component of *Walker Process* liability may be nearly identical. [Citations.]" *Transweb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1307 (Fed. Cir. 2016).

Avant expressly incorporated by reference the facts pled in its inequitable conduct claims in its antitrust claim, in which Avant contends that the Patents-in-suit are unenforceable due to fraud on the Patent Office. Doc. No. 77: FACC, ¶ 87. In its inequitable conduct claim, Avant alleged the requisite elements of fraud under Rule 9(b). To the extent that Avant adequately pled inequitable conduct, a *Walker Process* claim is also adequately pled. *Transweb, LLC*, *supra*, 812 F.3d at 1307.

Other district courts have held that similar allegations are sufficient to support a *Walker Process* claim. For example, in *Garmin v. TomTom*, 2007 U.S. Dist. LEXIS 74032 (E.D. Tex. Oct. 3, 2007), the antitrust claim alleged that the same patent claims at issue in the lawsuit were previously found invalid based on prior art. As a result, the court held that this meant the claimant "pled facts that show either the inventors or someone involved in the patent application or prosecution knew of the prior art and deliberately failed to disclose it." *Id*. at *10. That court analyzed the counterclaims as follows:

> TomTom claims that Garmin violated § 2 of the Sherman Act by asserting the fraudulently acquired '378 and '330 patents…
>
> TomTom alleges that one or more of the individuals involved in the filing and prosecution of the '378 patent "deliberately and intentionally committed fraud before the PTO." TomTom incorporates by reference the facts pled in its inequitable conduct claims… TomTom's fraud claim meets Rule 9(b)'s heightened pleading standard by identifying the "who, what, when, where, and how" of the alleged fraud when read in conjunction with TomTom's inequitable conduct claims. TomTom properly pled Walker Process fraud.
>
> Turing to the '330 patent … TomTom pled facts that show either the inventors or someone involved in the patent application or prosecution knew of the prior art and deliberately failed to disclose it. As with the '378 patent, TomTom also alleges that "the '330 patent would not have been granted (at least in their present form) but for Garmin's fraudulent omission." Because TomTom names the relevant prior art, identifies who failed to disclose it, and pled that the PTO relied on the omission, TomTom adequately pled the fraud element for the '330 patent.

*Garmin*, *supra*, 2007 U.S. Dist. LEXIS at 9-10. Like TomTom, Avant has identified the "who, what, when, where and how" of the alleged fraud. Doc. No. 77: FACC, ¶¶ 36–54. Furthermore, Avant demonstrated that the concealment was intentional and that the concealed information was material to the PTO's patentability determination. Doc. No. 77: FACC, ¶¶ 48–49, 53. Nothing more is required. See *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed.Cir. 1998).

### G.    Alternatively, Leave to Amend Should be Granted

If the Court determines that any of the allegations are deficient, Avant requests leave to amend. Federal Rule of Civil Procedure 15(a) provides that "leave shall be freely given when justice so requires." "Granting leave to amend is especially appropriate . . . when the trial court has dismissed a complaint for failure to state a claim." *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) (reversing denial of leave to amend). As set forth herein, ample factual support exists for Avant's Counterclaims. Avant respectfully requests that this Court grant it fourteen (14) days to file a Second Amended Counterclaim.

## IV.    <u>CONCLUSION</u>

As set forth herein, Avant has demonstrated that Anza's Motion to Dismiss under Rule 12(b)(6) is entirely without merit. All six of Avant's Counterclaims are adequately pled and supported with sufficient factual allegations to put Anza on notice of the basis of the claims against it. As such, Avant respectfully submits that the motion be denied in its entirety. Should the Court grant Anza's Motion to Dismiss any of Avant's Counterclaims, Avant requests leave to amend to cure any alleged deficiencies.

Respectfully submitted,

**PETTIT KOHN INGRASSIA LUTZ & DOLIN PC**

Dated:  June 14, 2018          By:  /s/ Jennifer M. Hendricks
                                    Douglas A. Pettit, Esq., SBN 160371 (*pro hac vice*)
                                    dpettit@pettitkohn.com
                                    Jennifer M. Hendricks, Esq., SBN 300263 (*pro hac vice*)
                                    jhendricks@pettitkohn.com
                                    **PETTIT KOHN INGRASSIA LUTZ & DOLIN PC**
                                    11622 El Camino Real, Suite 300
                                    San Diego, CA 92130
                                    Telephone:  (858) 755-8500
                                    Facsimile:  (858) 755-8504

                                    D. Scott Hemingway, Esq., SBN 09407880
                                    **HEMINGWAY & HANSEN, LLP**
                                    1700 Pacific Avenue, Suite 4800
                                    Dallas, TX 75201
                                    Telephone:  (214) 292-8300
                                    Facsimile:  (214) 292-8999
                                    E-mail: shemingway@hh-iplaw.com

                                    **Attorneys for Defendant**
                                    **AVANT TECHNOLOGY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the following document(s):

- **DEFENDANT AVANT TECHNOLOGY, INC., D/B/A MUSHKIN ENHANCED MFG'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS I-VI**

was/were served on this date to counsel of record:

[ ]    **BY MAIL:** By placing a copy of the same in the United States Mail, postage prepaid, and sent to their last known address(es) listed below.

[ ]    **BY E-MAIL DELIVERY:** Based on an agreement of the parties to accept service by e-mail or electronic transmission, I sent the above document(s) to the person(s) at the e-mail address(es) listed below. I did not receive, within a reasonable amount of time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[X]    **BY ELECTRONIC TRANSMISSION:** I electronically filed the above document(s) with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send notification of this filing to the person(s) listed below.

| | |
|---|---|
| Colby B. Springer, Esq.<br>Hannah T. Yang, Esq.<br>Miya Yusa, Esq.<br>POLSINELLI LLP<br>Three Embarcadero Center, Suite 2400<br>San Francisco, California 94111<br>Tel: (415) 284-2100<br>Fax: (415) 248-2101<br>E-mail: cspringer@polsinelli.com<br>       hyang@polsinelli.com<br>       myusa@polsinelli.com<br>**Attorney for Plaintiff**<br>**ANZA TECHNOLOGY, INC.** | Gregory V. Novak, Esq.<br>POLSINELLI LLC<br>1000 Louisiana St., 53rd Floor<br>Houston, TX 77002<br>Tel: (713) 374-1640<br>Fax:<br>E-mail: gnovak@polsinelli.com<br>**Attorney for Plaintiff**<br>**ANZA TECHNOLOGY, INC.** |
| Teri Hong-Phue Nguyen, Esq.<br>POLSINELLI LLC<br>1661 Page Mill Road, Ste A<br>Palo Alto CA 94304<br>Tel: (650) 461-7704<br>Fax: (650) 461-7701<br>E-mail:<br>**Attorney for Plaintiff**<br>**ANZA TECHNOLOGY, INC.** | |

Executed on **June 14, 2018,** at San Diego, California.

*Deborah L. Barton*
Deborah L. Barton

22